IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN LORRAINE BURNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:18-cv-00023-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.  Introduction

The plaintiff, Vivian Lorraine Burnett ("Burnett"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Burnett timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Burnett was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 180, 205.) Her past work experiences include employment as a dishwasher and cook. (Tr. at 205.)

Burnett claims that she became disabled on May 12, 2014, due to depression, anxiety, degenerative disc disease of the lumbar spine status post lumbar fusion at L5-S1, lumbar facet arthropathy, degenerative disc disease of the cervical spine, and osteoarthritis. (Tr. at 20.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision

depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Burnett meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 20.) He further determined that Burnett has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease of the lumbar spine status post lumbar fusion at L5-S1, lumbar facet arthropathy, degenerative disc disease of the cervical spine, osteoarthritis, depression, and anxiety are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Burnett's allegations to be totally credible, and he determined that Burnett has the following RFC:

> to perform medium wok as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, kneel, crouch, and crawl. The claimant can never work around unprotected heights. The claimant can understand, remember, and carry out simple instructions for two hours periods and can sustain these activities for an eight-hour day if provided all customary mid-morning, lunch, and mid-afternoon breaks. Decision-making and changes in the work setting are limited to occasion. Interaction with the public, coworkers, and supervisors are limited to occasional.

(Tr. at 22.)

According to the ALJ, Burnett has no past relevant work. (Tr. at 26.) She was 50 years old at the alleged onset date, which is defined as an individual closely approaching advanced age. (*Id.*) She has at least a high school education and is able to communicate in English. (*Id.*) The ALJ determined that transferability of job skills is not an issue because of the lack of past relevant work. (*Id.*) Because Plaintiff cannot perform the full range of medium work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 203.21 as a guideline. Considering Burnett's age, education, work experience, and RFC, the ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as automobile parts assembler, a laundry worker, and a packager. (Tr. at 27.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as

defined in the Social Security Act, at any time from May 12, 2014, through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Burnett claims that the ALJ's decision should be reversed because the ALJ did not have substantial evidence to discredit her subjective complaints of pain. Specifically, Burnett alleges that the ALJ improperly applied the pain standard by failing to explicitly cite objective medical evidence in the record that discredits her pain testimony.

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584

7

(11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a three-part pain standard when Plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the

Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). A reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega*, 933 F. Supp. at 1076 (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the Plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Burnett stated that she had to lie down most of the day because of pain and depression. (Tr. at 41-44, 49-50.) Burnett argues that the ALJ improperly applied

the pain standard because there is no objective medical evidence to discredit her subjective complaints of pain. The ALJ noted that the impairments causing Plaintiff's underlying medical condition could reasonably be expected to cause her alleged symptoms, satisfying part of the pain standard. (Tr. at 21.) However, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that is inconsistent with her subjective complaints. (*Id.*) The ALJ covers a variety of evidence to support his conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. at 23-25.) Substantial evidence supports the ALJ's conclusion in this case.

    The ALJ begins with objective medical evidence that does not support completely disabling allegations of pain and other symptoms. (Tr. at 23-25.) In April 2014, Burnett had an MRI done that displayed mild to moderate degenerative changes in the middle and lower back. (Tr. at 292.) On May 12, 2014, she underwent lumbar fusion surgery and alleged that this was the onset date for her disability. (Tr. at 294-98, 628-30.) Burnett spent several days in rehab, but she was discharged with full strength in her legs and only some lower back pain. (Tr. at 293.) Burnett expressed severe pain at virtually every visit before and after surgery. (Tr. at 332, 334, 336, 338, 340-45, 347, 349-52, 354, 356, 362, 371, 415-19, 424-25, 435, 437, 487,

532, 534, 600, 611, 616, 628, 696, 697.) Multiple years after the surgery, she testified that she still experiences a pain level of 9 out of 10 on a daily basis. (Tr. at 44.)

In June 2014, Burnett made a follow-up visit after her surgery with neurosurgeon Carter S. Harsh, M.D., who noted improvement but still found some lower back pain and right leg symptoms. (Tr. at 306.) In July 2014, Dr. Harsh conducted a study using AP and lateral lumbar spine films and found a postoperative fusion with good implant and hardware placement. (Tr. at 309.) He noted more improvement because Burnett was fluid in ambulation, heel walk, and toe walk. (Tr. at 308-09.) By August 2014, Dr. Harsh had a plan to wean Burnett off of a back brace and to progress her activity level after finding a fluid gait and full strength in the bilateral lower extremities. (Tr. at 311-12.) Also during August 2014, Burnett visited neurologist Thomas H. Patton, M.D., for a review of memory loss symptoms. (Tr. at 563-65.) Dr. Patton found Burnett to have normal muscle bulk and tone, normal gait, and full strength. (Tr. at 564-65.)

Following surgery, Burnett also continued visiting with her primary care physician, Martha Jo Christian, M.D., mainly for complaints of back pain. (Tr. at 415-22.) In October 2015, more than a year after surgery, Burnett reported increased pain to Dr. Christian after slipping and falling on multiple occasions. (Tr. at 418.) She still complained about pain in her lower back and legs. (*Id.*) Dr. Christian noted

that Burnett was diffusely tender over her back but had pretty normal strength and gait. (Tr. at 417-18.) Dr. Christian did not believe that Burnett needed another MRI because her symptoms were not severe and her pain could be attributed to a long history of arthritis. (Tr. at 417.) In December 2015, at another visit with Dr. Christian, Burnett was found to have increased tenderness and a positive straight leg raise. (Tr. at 416.) Dr. Christian could not point to a specific source of pain. (Tr. at 476.) Finally, Burnett had another MRI of her lumbar back that showed stable disc bulges and mild foraminal narrowing with no neural impingement. (Tr. at 477.) On a follow-up visit occurring a few months later, Burnett still had back pain but stated that the medication prescribed to her helped the pain. (Tr. at 415.)

After more than a year, Burnett visited Dr. Christian in May 2017 for pain in her back, hip, and leg. (Tr. at 697.) Dr. Christian noted some findings of tenderness in her back, a positive straight leg raise, nearly normal strength, and a normal right side. (Tr. at 697.) A nerve conduction study of her left leg showed normal results. (Tr. at 605.) During this gap in visits, Burnett made multiple urgent care visits where she consistently was found to have a good range of motion, negative leg raises, and no tenderness in her back. (Tr. at 587-93, 682-92.) Burnett also made a visit to Melissa Harrison, CRNP, for medication for her arthritis. (Tr. at 359-76.) Harrison, CRNP, noted morning stiffness and pain at a much lower level than before and found

normal balance, normal gait, and a normal examination of the body. (Tr. at 456-376.) In sum, the objective medical evidence between the alleged onset date, or the date of the surgery, and the time of applying for disability shows that Burnett experienced pain throughout but made consistent improvement and had nearly normal examinations of her physical well-being.

The examinations and opinions of Robert Estock, M.D., and Celtin Robertson, M.D., which the ALJ gave great weight, are not consistent with the severity of the alleged symptoms of Burnett. (Tr. at 25.) Despite a small amount of discomfort, Dr. Robertson found Burnett to have a normal gait, a full range of motion, negative leg raises, normal muscle bulk and tone, and normal muscle strength. (Tr. at 534-536.) The discomfort and tenderness in her back did not cause limitations in her functioning capacity to work. (*Id.*) Burnett needed assistance from the examination table to walk during the physical exam, but she was able to walk to and from the exam room without help. (Tr. at 534.) She also was able to get on and off the exam table without help. (*Id.*) After examination, Dr. Robertson concluded that she can stand and walk for up to six hours despite some difficulty. (Tr. at 536.) Burnett has no limitation with sitting nor any restriction on fine manipulative activities, and she does not require an assistive device. (*Id.*) Burnett can occasionally climb steps, kneel, or crawl with some back pain. (*Id.*) She can never climb ladders

or be exposed to unprotected heights due to increased risk of injury caused by a slower reaction time. (Tr. at 537.) None of the few limitations cited by Dr. Robertson is completely disabling nor would affect Burnett's capacity to work because these limitations were included in the RFC determined by the ALJ. (Tr. at 22.)

The assessment performed by Dr. Estock mirrors the RFC results of Dr. Robertson. (Tr. at 108-13.) Dr. Estock found that Burnett can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds. (Tr. at 109.) Burnett was found to be able to stand and/or walk (with normal breaks) for about six hours in an eight-hour work day; additionally, she may sit for about six hours during the same time. (*Id.*) Dr. Estock found only one postural limitation for Burnett: she may never climb ladders, ropes, or scaffolds. (*Id.*) Burnett was also found to have some manipulative limitations with handling, but Dr. Estock concluded that she can perform handling tasks frequently. (Tr. at 110.) Finally, Dr. Estock agreed with Dr. Robertson that Burnett has environmental limitations requiring her to avoid unenclosed heights and moving machinery. (*Id.*) The two doctors individually did not find limitations in her ability to work greater than the limitations provided by the ALJ in the RFC. (Tr. at 22.) Therefore, the ALJ correctly pointed to explicit reasons why the intensity and persistence of Burnett's alleged symptoms did not affect her ability to perform medium level work.

The ALJ explicitly brought up other objective medical evidence to support his disability finding, including Burnett's history of obstructive sleep apnea, inflammatory arthritis, mental impairments, and weight problems. (Tr. at 23-25.) The ALJ could not find evidence that her obstructive sleep apnea caused any functional limitations, but he did note that Plaintiff's weight could exacerbate subjective complaints of pain. (Tr. at 23-24.) Additionally, Burnett has a long history of anxiety and depression that may further enhance her subjective symptoms. (Tr. at 539.) However, she has received treatment for these mental impairments only in the form of medication from her primary care physician, Dr. Christian. (Tr. at 701.) Burnett visited a neuropsychologist, Mark L Prohaska, Ph.D., who concluded that Burnett's psychological symptoms do have a negative impact on her life. (Tr. at 540.) However, the ALJ did not give this opinion as great of weight because Dr. Prohaska did not make specific findings on her functional limitations other than stating that Burnett's primary obstacle to employability is her physical limitations. (*Id.*)

In sum, despite Burnett's subjective complaints of pain, the objective medical records show that she did not have functional limitations greater than those in the RFC that would affect her capacity to work. She repeatedly exhibited normal gait, full strength, normal walking, intact sensation, full range of motion, normal muscle bulk and tone, and normal lower extremities. *See Laurey v. Comm'r of Soc. Sec.*, 632

F. App'x 978, 988 (11th Cir. 2015) (determining that substantial evidence supported the ALJ's decision to discount the Plaintiff's subjective complaints in part because the evidence showed only mild abnormalities, full muscle strength, a normal gait, and a conservative treatment plan). Although Plaintiff exhibited periodic tenderness, this can be attributed to multiple falls and a history of arthritis. (Tr. at 417.) The ALJ properly accounted for these minimal limitations caused by her pain by limiting her to medium work with several postural limitations. (Tr. at 22.)

The ALJ may also consider treatment history and medication in determining whether Burnett's alleged symptoms affect her capacity to work. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ explicitly pointed to substantial evidence of a conservative treatment history that was inconsistent with her subjective complaints. (Tr. at 23-25.) Records after Burnett's lumbar fusion surgery show a treatment plan of physical therapy and medication. (Tr. at 308-09, 359-76, 422). In July 2014, two months after surgery, Dr. Harsh found a fluid gait and normal walk, so he prescribed some pain medication and physical therapy because Burnett only complained of pain that was not severe. (Tr. at 308-09.) In September 2014, Dr. Christian also recommended that Burnett only receive pain medication and physical therapy as treatment. (Tr. at 422.) Over a year later, Burnett told Dr. Christian that the medications helped the pain in her back. (Tr. at 415.) Burnett experienced significant sustained

improvement after surgery despite claims of weakness, and she only made occasional appointments for back pain. *See Crow v. Comm'r of Soc. Sec.*, 571 F. App'x 802 (11th Cir. 2014) (finding the plaintiff's treatment history to be characterized by medication-monitoring appointments every few months and significant sustained improvement and that the evidence discredited the plaintiff's subjective complaints of pain and an inability to work). Because the ALJ used evidence to show that Burnett's condition improved and that she only received conservative treatment, the ALJ properly discredited her testimony when taking under consideration her treatment history.

The ALJ also correctly noted that Plaintiff's daily activities may be considered when determining functional limitations and restrictions due to pain or other subjective symptoms. *See Foote*, 67 F.3d at 1561 (holding that the court must consider the entire record when determining whether the evidence of Plaintiff's daily activities is substantial evidence for the ALJ conclusion). Burnett only slightly modified her daily living after the alleged onset date by reducing bending. (Tr. at 532-33.) Burnett is independent in her personal care and grooming, can drive a car, fix simple meals, do laundry, perform household chores, watch television, attend church weekly, and go grocery shopping. (*Id.*) The ALJ concluded that these activities are not consistent with totally disabling symptoms and limitations. (Tr. at

25.) While the performance of sporadic or simple functions may not necessarily defeat a disability claim, the Eleventh Circuit has acknowledged the relevance of daily activities in these cases. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding that an ALJ may consider daily activities in assessing a Plaintiff's credibility); *see also* 20 C.F.R. § 404.1529(c)(3) (specifically listing daily activities as a factor to consider in evaluating a claimant's credibility).

It appears to this Court that the ALJ properly applied the pain standard in the case at hand. Specifically, the ALJ addressed Plaintiff's allegations of pain and explicitly provided substantial evidence that established a reasonable basis for rejecting Burnett's testimony. *See Dyer*, 395 F.3d at 1212.

## IV. Conclusion

Upon review of the administrative record, and considering Burnett's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 18, 2019.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704